UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dain Rauscher Incorporated,

Plaintiff,

vs.

Qumran, Inc.,
John Baulian,
Cornelia Beens,
Tempel Int'l Corp.,
Baracuda Economical Resource,
Frunzik Galstyan,
Sinesio Jesus Pasarin Dias,
Eastover Ltd., Marlene Oilgisser,
Haresh Patel, Anastasios Drivas,
Abingbury Investments Limited,
JMD International,
Fard International Trading Limited,
United Bank Open Joint-Stock Company,
and Does 1-10,

Defendants,

And

Sinesio Jesus Pasarin Dias,
Eastover Ltd., Marlene Oilgisser,
Haresh Patel, Anastasios Drivas,
Abingbury Investment Limited,
JMD International, and
Fard International Trading Limited,

Counterclaim Plaintiffs,

vs.

Jon Kappes,

Additional Counterclaim Defendant.

Civil No. 01-CV-99 JEL/JGL

**REPORT AND RECOMMENDATION**

JUL 02 2002
FILED
RICHARD D SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. INTRODUCTION

**THIS MATTER** came for a hearing before the undersigned United States Magistrate Judge on April 26, 2002, on Defendants Frunzik Galstyan and United Bank Open Joint Stock's Motion to Dismiss the Action or the Crossclaims, or to Dismiss Both or Either of the Defendants, or in the Alternative to Stay the Action, and to Compel Arbitration. This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636. For the reasons that follow, this Court will recommend that Defendants' motion be denied in its entirety.

## II. FACTUAL BACKGROUND

Plaintiff Dain Rauscher, a Minnesota investment banking firm, commenced this action to resolve conflicting claims to approximately $4 million in five accounts formerly under the control of Defendant John Baulian but frozen by Dain Rauscher after it received notice of alleged fraudulent activity regarding those accounts. Collectively, eight known entities (the Counterclaim Plaintiffs) claim they invested a total of $17.95 million in Baulian's "Qumran" account and now seek repayment of their investment sums (ranging individually from $200,000 to $10.5 million). Since Baulian's accounts hold only approximately $4 million, Dain Rauscher brought an interpleader action under Fed. R. Civ. P. 22 to resolve the conflicting claims in order to avoid duplicative litigation and inconsistent liability regarding the disputed funds.

In total, about $18.1 million was deposited in the Qumran account from late 1998 through 2000. During that same time, funds were transferred out of the Qumran account to Defendants Baulian and Beens, and to other individuals and entities not parties to this suit. Defendant Sinesio Jesus Pasarin Dias contacted Dain Rauscher on December 13, 2000, with concerns of a fraudulent scheme regarding the Qumran account and requested that it and all related accounts be frozen. Dain

Rauscher inspected and then froze the five Baulian accounts, containing approximately $4 million. Dain Rauscher was then contacted by the other seven Counterclaim Plaintiffs between January and June, 2001, all of whom were seeking to recoup their investment monies. Galstyan also made a claim against the remaining funds.

In June, 2001, Dain Rauscher was instructed to transfer all assets in the Baulian accounts to the United Bank account, because Baulian, Beens and Galstyan had assigned their accounts to that bank. Subsequently, United Bank transferred its interest in the accounts to AMF Co., Ltd., a company in which Galstyan is a director. Dain Rauscher continues to hold the funds in administratively-frozen accounts and filed the present action to resolve the conflicting claims.

The Counterclaim Plaintiffs have filed numerous counterclaims and crossclaims alleging negligence, breach of fiduciary duty, breach of contract, promissory estoppel, unjust enrichment, conversion, fraud and misrepresentation regarding the missing $14 million.

Defendants Galstyan and United Bank seek to dismiss or stay the action. Specifically, they: (1) contend Dain Rauscher cannot properly bring an interpleader action given the counterclaims against it; (2) challenge the existence of diversity jurisdiction; (3) challenge the existence of personal jurisdiction; (4) argue that the counterclaims fail to state a claim for which relief can be granted; (5) contend they have not been properly served; and (6) contend the action should be dismissed or stayed while the dispute is arbitrated pursuant to Galstyan's agreement with Dain Rauscher.

## III. DISCUSSION

### A. Plaintiff can properly bring an interpleader action, despite the counterclaims against it.

Interpleader is a suit to determine a right to property held by a disinterested third-party who is in doubt about the property's ownership and who therefore seeks the court's guidance in

determining rightful ownership. Under Federal Rule of Civil Procedure 22(1), interpleader is proper when "the plaintiff is or may be exposed to double or multiple liability." Ordinarily, interpleader has been liberally granted by the courts. See State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 533 (1967).

Each of the defendants has made a claim to some or all of the remaining funds associated with the Qumran account, subjecting Dain Rauscher to conflicting claims to the funds in that account. This is a textbook example of the situation interpleader was designed to address. See Salomon Smith Barney, Inc. v. McDonnell, 201 F.R.D. 297, 302 (S.D.N.Y. 2001) (rule interpleader proper where there were conflicting claims made against funds in a brokerage account).

The interpleader action is not made improper simply because the defendants have brought counterclaims against the plaintiff. See e.g., Wayzata Bank & Trust Co. v. A & B Farms, 855 F.2d 590, 593 (8th Cir. 1988). In fact, courts have specifically rejected the contention that interpleader is improper if the stakeholder was independently liable to one of the claimants. See Dakota Livestock Co. v. Keim, 552 F.2d 1302, 1307 (8th Cir. 1977). As our Court of Appeals in Keim noted, interpleader protects stakeholders from multiple litigation and that function is served even if the stakeholder may be subject to liability to one or more of the parties in the action.

Finally, the counterclaims against Dain Rauscher pertain not to the $4 million remaining in the Baulian accounts for which Dain Rauscher seeks relief, but to the approximately $14 million missing from the Qumran account. As such, those counterclaims are independent of the interpleader funds and Dain Rauscher has not sought relief in the interpleader action from those counterclaims, which will be resolved separately.

For the foregoing reasons, the court concludes that the interpleader action is proper and recommends that Defendant's motion to dismiss on this basis be denied.

**B. Diversity Jurisdiction exists.**

Diversity jurisdiction under 28 U.S.C. § 1332 is available in all civil matters where the amount in controversy exceeds $75,000 and is between citizens of different states or between citizens of a state and citizens or subjects of a foreign state. In this case, the plaintiff is a Minnesota corporation with its principle place of business in Minnesota, while none of the defendants are citizens of Minnesota. As such, jurisdiction is proper under 28 U.S.C. § 1332(a)(1) (actions between citizens of different States) and (a)(2) (actions between citizens of States and citizens or subjects of foreign states). Defendants themselves indicate that if the interpleader is proper, diversity jurisdiction is as well. Since the Court finds the interpleader action proper, it will not further analyze this point.

Assuming *arguendo* that the interpleader action was improper, diversity jurisdiction would still be proper. Without the interpleader action, Defendants are correct that the suit would be properly aligned, through the counterclaims, as "Aliens and Citizen v. Citizens and Aliens" (Counterclaim Plaintiffs v. Counterclaim Defendants). However, if this were the case, Defendants are incorrect that such an alignment is prohibited by the diversity jurisdiction statute because there are aliens on both sides of the dispute. It is well settled that as long as there are legitimate claims by and against diverse domestic citizens, the presence of aliens on both sides of a dispute does not destroy diversity jurisdiction. See Dresser Indus., Inc. v. Underwriters of Lloyd's of London, 106 F.3d 494, 497-500 (3d Cir. 1997); Allendale Mut. Ins. Co. v. Bull Data Sys., Inc., 10 F.3d 425 (7th

Cir. 1993); Transure, Inc. v. Marsh and McLennan, Inc., 766 F.2d 1297, 1298-99 (9th Cir. 1985); Goar v. Compania Peruna de Vapores, 688 F.2d 417, 421 n.6 (5th Cir. 1982).

The Court finds diversity jurisdiction proper and recommends that Defendants' motion to dismiss due to a lack of subject matter jurisdiction be denied.

**C. Personal Jurisdiction exists over Galstyan and United Bank.**

To survive a motion to dismiss, the plaintiff need only make a prima facie showing that personal jurisdiction exists. See Hardrives, Inc. v. The City of LaCrosse, Wisconsin, 307 Minn. 290, 240 N.W.2d 814, 816 (Minn. 1976). "[D]oubt should be resolved in favor of retention of jurisdiction." Id. at 818. Any doubt regarding the sufficient of contacts to support the exercise of personal jurisdiction should be in favor of finding jurisdiction. See Valspar Corp. v. Lukken Color Corp., 307 495 N.W.2d 408, 412 (Minn. 1992).

As long as the federal due process clause is satisfied, Minnesota's long-arm statute, Minn. Stat. § 543.19, provides that "a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any nonresident individual" if "the foreign corporation or nonresident individual (a) owns, uses, or possesses any real or personal property in situated in the state, or (b) transacts any business in the state." Additionally, the exercise of jurisdiction must not offend traditional notions of fair play and substantial justice. See Int'l Shoe Co. v. Wash., 326 U.S. 310 (1945). The person over whom jurisdiction is to be exercised must have purposely availed himself to an extent that he would have reason to expect to be haled into court. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).

Here, Galstyan and United Bank both hold accounts at Dain Rauscher. Galstyan received at least one wire transfer from Minnesota, through Dain Rauscher, in the substantial amount of $1

million. United Bank is tied to the remaining Baulian funds at Dain Rauscher because Defendants Baulian, Beens and Galstyan assigned their interests in the disputed funds to United Bank; it cannot escape the suit on jurisdictional grounds simply because it has transferred its interests in the accounts to AMF. These contacts alone are sufficient for this court to confer jurisdiction since both prongs of the long-arm are satisfied: there are both Minnesota business transactions and property use/ownership/possession regarding both Defendants. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980); Int'l Shoe, supra. Since the accounts once held by Defendants are currently frozen and in fact *are the stake at issue* in the interpleader action, there is no question that they relate directly to the issue giving rise to the present action, so specific jurisdiction is properly met as well. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).

Finally, *quasi-in-rem* jurisdiction is personal jurisdiction based on a person's interest in property located within the court's territory. Even if the traditional personal jurisdiction tests discussed above were unsatisfied, this Court, pursuant 28 U.S.C. § 1655, can exercise *quasi-in-rem* jurisdiction over the Defendants because of their interest in the disputed funds deposited, maintained, frozen and currently held in Minnesota. See Bache Halsey Stuart Shields Inc. v. Garmainse, 519 F. Supp. 682 (S.D.N.Y., 1981); United States v. Estate of Swan, 441 F.2d1082, 1085 (5th Cir. 1971).

Accordingly, this Court finds that it has personal jurisdiction over Defendants, and recommends that Defendants' motion to dismiss for lack of personal jurisdiction be denied.

**D. Defendant's 12(b)(6) motion to dismiss should be denied.**

**1. Standard of Review.**

In the case of a defendant's 12(b)(6) motion to dismiss for failure to state a complaint upon which relief can be granted, the court is limited to considering the allegations of the complaint, must take those allegations as true and must view the complaint in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Ring v. First Interstate Mfg., Inc., 984 F.2d 924 (8th Cir. 1993); Klett v. Pim, 965 F.2d 587, 589 (8th Cir. 1992); United States v. Aceto Agric. Chem. Corp., 872 F.2d 1373, 1376 (8th Cir. 1989); Toombs v. Bell, 798 F.2d 297, 298 (8th Cir. 1986). The court should not grant a motion to dismiss merely because the complaint does not state with precision every element of the offense necessary for recovery. See 5 Wright & Miller, Federal Practice and Procedure: Civil, §§ 1216 at 120 (1969). A complaint is sufficient if it "contains allegations from which an inference can be drawn that evidence on these material points will be introduced at trial." Id. at 122-23. Moreover, a court should not dismiss a complaint unless it "appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his complaint which would entitle him to relief." Conley, 335 U.S. at 45-46. Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982); see also Palmer v. Tracor, Inc., 856 F.2d 1131 (8th Cir. 1988); Baxley-DeLamar Monuments, Inc. v. American Cemetery Ass'n, 843 F.2d 1154 (8th Cir. 1988).

**2. Conclusions of Law.**

Galstyan and United Bank contend that the Counterclaims related to unjust enrichment fail to state a claim upon which relief may be granted, that the successor liability claim against United Bank fails to state a claim, and therefore, Galstyan and United Bank should be dismissed from the suit or the Crossclaims dismissed.

Essentially, Defendants argue that for an unjust enrichment claim to lie, the Counterclaim Plaintiffs must prove that the other party "knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." See Mem. In Supp. of Defs. Galstyan and United Banks' Motions at 20-21 ("Defs.' Supp. Mem."). To survive a 12(b)(6) motion to dismiss, however, that analysis is incorrect. The Counterclaim Plaintiffs need only allege facts from which this Court can infer that evidence supporting the unjust enrichment claims will be introduced at trial.

Here, the Counterclaim Plaintiffs have alleged that Defendants Qumran, Baulian and Beens improperly withdrew Counterclaim Plaintiffs' funds from the Qumran account, spent it for their own use and benefit to the detriment of Counterclaim Plaintiffs, and were therefore unjustly enriched. The Counterclaim Plaintiffs have also alleged that Defendants Galstyan and United Bank have been assigned Baulian's and Beens' rights regarding the funds associated with this litigation, received more than $1 million of the Counterclaim Plaintiffs' money and that Counterclaim Plaintiffs received nothing in return. Based on the foregoing, this Court concludes that evidence supporting Defendants Galstyan and United Bank's alleged unjust enrichment is likely to be introduced at trial, an inference supported in the record by the wire transfer records attached to Plaintiff Dain Rauscher's Second Amended Complaint as Exhibits A (incoming Qumran account funds) and B

(outgoing Qumran wire transfers). Given that inference and the fact that for the purposes of this dismissal motion, the Counterclaim Plaintiffs' allegations must be taken as true, this Court recommends that Defendants' motions to dismiss Defendants or the Unjust Enrichment Counterclaims for failure to state a claim be denied.

Insofar as Defendants' motion to dismiss relates to United Bank's successor liability, the Court recommends that said motion be denied. United Bank contends it no longer has any interest in the Qumran funds because it has assigned its interest to AMF and therefore should be dismissed as a party. However, there appears to be a direct connection between Galstyan, United Bank and AMF, providing an inference that evidence may be introduced at trial to support an existing United Bank interest in, and successor liability for, the existing and missing Qumran funds, respectively. According to Galstyan's and United Bank's memorandum supporting their dismissal motions, "United Bank is Defendant Frunzik Galstyan's bank as well as the bank for his development and general contracting firm, AMF, Co., Ltd." See Defs.' Supp. Mem. at ¶ 11. Galstyan, Baulian and Beens all assigned their interests in the administratively-frozen funds to United Bank, in which it is alleged that a blood relative of Galstyan is a director. It is also alleged that United Bank then assigned those interests to AMF, which Galstyan himself either controls or is a director. In light of the foregoing, this Court concludes that it does not appear beyond a reasonable doubt that the Counterclaim Plaintiffs can prove no set of facts entitling them to relief. As such, it cannot be ruled as a matter of law that the successor liability claim against United Bank fails to state a claim upon which relief can be granted. This Court therefore recommends that Defendants' motion to dismiss United Bank be denied.

**E. Defendants have been properly served.**

**1. Galstyan has been properly served.**

Fed. R. Civ. P. 4(f) allows for service upon foreign individuals by internationally agreed means, such as the Hague Convention, or by other means provided that the service is reasonably calculated to give notice. Since Armenia is not a signatory to the Hague Convention, the other applicable means of service, allowed under Rule 4(f)(2) are: (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or (B) as directed by the foreign authority in response to a letter rogatory or letter of request; or (C) unless prohibited by law of the foreign country, but (i) delivery to the individual personally a copy of the summons and complaint; or (ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served. See Fed. R. Civ. P. 4(f)(2). Dain Rauscher properly served Galstyan under Rule 4(f)(2)(C)(ii) by sending the Second Amended Complaint and Summons via registered mail on October 5, 2001.

Alternatively, under Rule 4(f)(2)(A), service upon Galstyan may also be made pursuant to Armenian law. Article 78 of Armenia's Civil Procedure Code provides for service of a summons. Article 78 provides that service is proper if the summons is sent by registered mail with notification of receipt, or by other reliable means of communication, or are handed with a signature, or if the summons is sent at the address indicated by the person participating in the case. Plaintiff satisfied these requirements by serving Galstyan in person. On May 27, 2001, the Amended Complaint and Summons were personally served and left with Galstyan; even though he refused to sign for them, Galstyan kept the documents. On September 15, 2001, Plaintiff attempted personal service of the Second Amended Complaint and Summons by handing a copy to N. Shaboyan, Galstyan's secretary,

who signed for the documents. Plaintiff also satisfied these requirements by mailing the Complaint to Galstyan on three separate occasions. By satisfying the service requirements under Armenian law, Plaintiff also accomplished proper service under Rule 4(f)(C)(i). Accordingly, this Court recommends that Defendants' motion to dismiss for lack of proper service be denied.

**2. United Bank has been properly served.**

Under Rule 4(h)(2), service upon United Bank may be made in any manner prescribed under Rule 4(f) except for personal service under Rule 4(f)(2)(C)(i), meaning that service upon the Bank can be made in the manner prescribed by Armenian law. Plaintiff has effected such service, under Rule 4(f)(2)(C)(ii) by having the District Court clerk send the Second Amended Complaint and Summons to United Bank via registered mail. Plaintiff also effected service upon the Bank under Armenian law, which does not differentiate between individuals and corporations. Therefore, Article 78 of the Armenian Code of Civil Procedure, as described above, applies to United Bank. On August 6, 2001, Plaintiff sent the Amended Complaint and Summons by mail, and received in response a "Ministry of Communication Receipt" and a "Notification on delivery of a mail dispatch." Plaintiff also personally served the Second Amended Complaint and Summons upon the Bank on September 15, 2001, by handing a copy to S. Sargsyan, a United Bank Security Officer. S. Sargsyan signed as receiving the documents on behalf of United Bank. Armenian law does not require that an authorized person accept the service.

In light of the foregoing, this Court concludes that both Defendants have been properly served under Armenian law and the American Federal Rules of Civil Procedure. Therefore, this Court will recommend that their motions to dismiss for lack of proper service be denied.

**F. Defendants Galstyan and United Bank's motion to stay the action and compel arbitration should be denied.**

Plaintiff Dain Rauscher brought the interpleader action to resolve competing claims to the remaining approximately $4 million in the Qumran and Baulian accounts. Arbitration between Galstyan and Dain Rauscher will not resolve the claims of all the parties claiming an interest in the remaining funds, nor will it resolve the claims surrounding the missing approximately $14 million. Because the interpleader action is proper, it is within this Court's discretion to find that resolution of the interests in the interpleader action outweighs a mandate of the Galstyan-Dain Rauscher arbitration.

Galstyan's arbitration clause with Dain Rauscher covers "any controversy arising out of or relating directly or indirectly *to this agreement*, *or any investment by the Client* [Galstyan] hereunder, *or with respect to any transactions of any kind* executed by or with Dain Rauscher *relating to the accounts* with Dain Rauscher or the breach thereof." See Affidavit of Frunzik Galstyan, Ex. 3. (emphasis added). It cannot be said as a matter of law that the interpleader action relates to the specific agreement between Galstyan and Dain Rauscher and that therefore the action should be stayed and arbitration must be compelled. Neither Galstyan nor Dain Rauscher allege that their agreement, or any Galstyan investment, or any specific Galstyan account transactions, or Dain Rauscher's service of Galstyan's account *give rise* to any controversy. Rather, the interpleader action arises out of multiple parties making competing claims to the funds remaining in Qumran-related accounts, of which Galstyan's is simply a part. In fact, no issue has been raised by either Dain Rauscher or Galstyan that could be properly settled by securities law arbitrators.

Furthermore, compelling arbitration of the general dispute before the Court between these two parties would defy the reasoning behind the interpleader rule and would destroy its value as a

legal remedy since only one (Galstyan) of the many defendants could expect resolution of its claims. Additionally, if arbitration were to be compelled between all parties with arbitration clauses in Dain Rauscher agreements, not all the parties before the Court could be compelled to arbitrate because many of them have no arbitration agreements with Dain Rauscher.

The only forum in which all claims to the interpleader stake can be resolved is this Court, which has jurisdiction to adjudicate the interpleader claim and has jurisdiction over all the parties. For the foregoing reasons, this Court concludes that Galstyan's agreement with Dain Rauscher does not compel arbitration over the Interpleader action or the Counterclaims, but even if it did, the Court's discretion allows it to conclude that resolution of the Interpleader Claims and subsequent Counterclaims and Crossclaims outweighs the benefits of compelling arbitration between Dain Rauscher and Galstyan. Accordingly, this Court recommends that Defendants' motion to stay the action and compel arbitration be denied.

## IV. RECOMMENDATION

Based upon the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants Frunzik Galstyan and United Bank Open Joint Stock's Motion to Dismiss the Action or the Crossclaims, or to Dismiss Both or Either of the Defendants, or in the Alternative to Stay the Action, and to Compel Arbitration be **DENIED** in its entirety.

DATED: July 1, 2002

Franklin L. Noel
FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.